Mary Evelyn CLARK, Plaintiff-Appellant,

v.

OLINKRAFT, INC., Defendant-Appellee.

No. 76-1183.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1977.

---

Joe D. Guerriero, Allan L. Placke, Monroe, La., for plaintiff-appellant.

Peyton Lacy, Jr., Monroe, La., G. Phillip Shuler, III, New Orleans, La., for defendant-appellee.

Before TUTTLE, WISDOM, and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

## I.

Under Title VII of the Civil Rights Act of 1964 (the Act), a person seeking relief from employment discrimination is required to file a charge with the Equal Employment Opportunity Commission (EEOC) within one hundred and eighty days after the alleged unlawful practice has occurred.[1] This appeal raises the increasingly litigated question, what constitutes a "continuing violation" of the Act for purposes of "tolling" the running of the one hundred and eighty day period.

On March 5, 1975, Mary Evelyn Clark, plaintiff-appellant, filed a charge under oath with the EEOC in which she alleged that she suffered injury while employed at Olinkraft, Inc., the defendant-appellee, because she had been denied job promotions and pay on the basis of her sex. In a written decision dated July 23, 1975, the EEOC found no reasonable cause to believe that the defendant discriminated against the plaintiff in violation of the Act. On

---

1. The 1972 amendments to the Civil Rights Act of 1964 expanded many of the timing requirements established in the original Act. 42 U.S.C. § 2000e–5(d) was redesignated, 42 U.S.C. § 2000e–5(e), and the ninety day requirement was expanded to one hundred and eighty days. An examination of the legislative history of the amendments, as reported in 2 U.S.Code Cong. & Admin.News pp. 3224–3288 (1972), is unhelpful in addressing the problem involved in this case.

July 23, 1975, the Commission notified Clark under the provisions of Section 706(e) of Title VII of the Act, that she had the right to bring a civil action in a United States District Court. On October 7, 1975, Clark brought the present action against Olinkraft.

Clark alleged in her complaint that Olinkraft [2] employed her on March 12, 1964 as a feeder-grabber in its paper mill operations. On October 1, 1974, a period in excess of ten years from the date of her first employment with the defendant, the plaintiff was finally promoted from feeder-grabber to the position of roll handler. Clark contended that for some time before the Spring of 1964 and for some time thereafter, her employer had an established policy or practice of promoting to better paying jobs over qualified women, men with less seniority, and of paying women a lower salary than men performing the same job. Clark also alleged that during the period from March 12, 1964, to October 1, 1974, a period in excess of ten years, the defendant continued to promote from feeder-grabber to roll handler numerous men with less seniority than she and during this period men with less seniority were paid a higher salary than she for performing the same job. Additionally, the plaintiff alleges that the unlawful employment practices of the defendant have not ceased in that the defendant continues to promote to better paying jobs men with less seniority than she, who is qualified for these better paying jobs, and continues to pay men with less seniority a greater salary for performing the same job she performs.

Olinkraft moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted under 42 U.S.C.A. § 2000-5(e), because "all allegations of the complaint are based on facts and events which occurred more than one hundred eighty days prior to March 5, 1975, which was the date of the filing of her charge of employment discrimination with the United States Equal Employment Commission." The basis of Olinkraft's motion was that the United Paperworkers International Union, AFL–CIO, Local Union No. 654, collective bargaining representative for the employees, on August, 1974 entered into an agreement with Olinkraft whereby a certain "affected class" of female employees,[3] of which Clark is a member, would be allowed to compete for promotions based on their company seniority. Indeed, after the signing of the agreement, Clark was promoted several times. Olinkraft argues therefore that the alleged discriminatory system and practices ceased at the time the agreement went into effect,[4] more than one hundred eighty days before the plaintiff filed her charge. Presumably on this theory, the district court granted the motion to dismiss. From this order of dismissal Clark appeals.

## II.

Initially, we note that the nature of the procedural context in which this case arises is somewhat unclear. The original motion by Olinkraft was styled as a motion to dismiss. In addition, the trial judge characterized his order as the granting of a motion to dismiss. The confusion[5] derives from the fact that Clark's deposition was also presented to the trial judge. Although it is not apparent from the order, we assume that the deposition was considered, placing this case in a summary judgment framework. See 2A Moore's Federal Practice ¶ 12.09, at 2287–2313 (2d ed. 1975).

The allegations in the complaint bring the plaintiff's case within the accepted doctrine of continuing violations. *Rich v. Mar-*

---

2. Olinkraft, Inc., is engaged in the manufacture of folding cardboard cartons at the plant where Clark is employed.

3. The "affected class" was defined as "those female employees in the bargaining unit . . who were employed by Olinkraft prior to July 1, 1965.

4. The agreement is dated December 12, 1974, but specifically notes that the agreement is effective as of August 12, 1974.

5. During argument, counsel for the parties also were not certain as to the nature of the order issued below.

tin Marietta Corp., 10 Cir. 1975, 522 F.2d 333; cf. Equal Employment Opportunity Commission v. Western Publishing Co., 8 Cir. 1974, 502 F.2d 599; Macklin v. Spector Freight System, Inc., 1973, 156 U.S.App. D.C. 69, 478 F.2d 979; Belt v. Johnson Motor Lines, Inc., 5 Cir. 1972, 458 F.2d 443; Bartmess v. Drewrys U.S.A., Inc., 7 Cir. 1971, 444 F.2d 1186; see generally Developments in the Law-Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1209–1212. Clark contends not simply that the agreement between the Union and Olinkraft does not sufficiently remedy the effects of past discrimination but also that discrimination in promotion and pay constitutes a continuing and unlawful employment practice in violation of Title VII.

In the trial court, Olinkraft argued that the *failure to promote* does not constitute a continuing violation, relying heavily on cases holding that the *failure to hire* does not constitute a continuing violation. *Collins v. United Airlines*, 9 Cir. 1975, 514 F.2d 594; *East v. Romine, Inc.*, 5 Cir. 1975, 518 F.2d 332. As pointed out by the court, however, in *Rich v. Martin Marietta Corp.*, 10 Cir. 1975, 522 F.2d 333, 348, cases involving the failure to promote are distinguishable. The court in *Rich* commented as follows:

We finally must take up the factor of timing. The court found that in some instances there were no openings in positions for which the plaintiffs were qualified within the 90 days [now 180 days] prior to the filing of charges with the EEOC. The court apparently read *McDonnell-Douglas* [*McDonnell-Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] as saying that if an employer has employed no one during the 90 days [now 180 days] preceding the filing of charges with the EEOC, it is impossible to have an unlawful employment practice committed within the time limitations of 42 U.S.C. § 2000e–5(e).

This is in relation to the *McDonnell-Douglas* criterion requiring that plaintiff show that he applied for a job for which the employer was seeking applicants.

Clearly this applies to new employment and is different from an employee who is seeking promotion. The former takes place on a particular day, whereas in the promotion area it invariably arises during a lengthy period of time. Plaintiffs here challenge the entire promotion system maintaining that it continually operated so as to hold them in lower echelons. Hence, the 90 day period [now 180 days] period prior to the filing of the EEOC charges looms inconsequential in this kind of case. If proven, these charges of discriminatory refusal to promote would be violative of 42 U.S.C. § 2000e–5. (Emphasis added.)

We are in accord with the views expressed in *Rich*. Clark's allegations, therefore, are sufficient to toll the running of the one hundred and eighty day period; here the discrimination in promotion and pay continues.

The same result obtains when the case is viewed as a summary judgment. Olinkraft contended during argument that viewed as a summary judgment, the plaintiff's only possible claim is that continuing effects of past discrimination make her filing timely and that even if this theory might be valid in some circumstances, the theory has no application in the present setting since Olinkraft's agreement with the Union provides full relief.

For several reasons, Olinkraft's argument fails. To begin with, the posture of the case does not permit us to say whether or not the Union agreement affords full relief. This is a determination to be made initially by the district court, *Franks v. Bowman Transportation Co.*, 1976, 424 U.S. 747, 770–71, 96 S.Ct. 1251, 47 L.Ed.2d 444, and no such determination has yet been made. Second, although the validity of expanding the continuing violation theory to continuing effects of past discrimination is seriously disputed, there is some recent support for this expansion. *See Evans v. United Airlines*, 7 Cir. 1976, 534 F.2d 1247, *cert. granted*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d

282 (1976);[6] *Keenan v. Pan-American World Airways* (N.D.Cal.1976), 13 FEP 1530. In *Evans*, the Court was faced with a charge filed in February of 1973 by a plaintiff who had been terminated in 1968 because of an unlawful "no-marriage" rule. The company established this rule in 1968 and in 1972 hired plaintiff as a new employee. The plaintiff complained that she should receive seniority credit based on her prior service. The company defended on the basis that the seniority system was neutral and plaintiff's charge was untimely as to any alleged unlawful act. The *en banc* court reconsidered its original affirmance of the dismissal of this case in light of the Supreme Court's decision in *Franks v. Bowman Transportation Co.* In *Franks* the Supreme Court addressed itself to the appropriateness of remedial competitive seniority as remedial relief for discriminatees who had been denied employment or transfers based on past unlawful discrimination. The Court decided that such retroactive seniority was a proper remedy. It concluded that "[a]dequate relief may well be denied in the absence of a seniority remedy slotting the victim in that position in the seniority system that would have been his had "he been hired at the time of this application" 424 U.S. at 764–65, 96 S.Ct. at 1265. In light of *Franks*, the Seventh Circuit reversed its original decision. The seniority system, it held, which denied that plaintiff credit for seniority prior to her unlawful discharge, "transmits into the present the disadvantages allegedly resulting from 1968 discrimination". The action was therefore held not to be time-barred.

**6.** The petition for certiorari was filed on September 3, 1976, and was granted November 1, 1976. Oral argument was heard on March 29, 1977.

**7.** While this opinion was being circulated, the Supreme Court reached a decision in *Evans*, —— U.S. ——, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), reversing the Court of Appeals. As already noted, our decision in the instant case does not depend on the validity of the theory asserted in *Evans*.

**8.** We also note that appellant contends that even if her only claim related to continuing effects of past discrimination, the date on which she was first promoted, September 8,

We need not reach the question presented in *Evans*, however, since even if the trial court order is viewed as a summary judgment, there exists a critical disputed factual question concerning the active discrimination that continued beyond the effective date of the agreement.[7] Although Clark's deposition was confusing at points, she repeatedly stated that even after the effective date of the agreement, men with less company seniority than her seniority were promoted ahead of her. As a result, summary judgment was inappropriate.[8] The allegations of the complaint and testimony in the deposition show that continuing discrimination is under attack. The appellant's action therefore is not time-barred.[9]

REVERSED AND REMANDED.

COLEMAN, Circuit Judge, dissenting.

*United Air Lines v. Evans,* —— U.S. ——, 97 S.Ct. 1885, 52 L.Ed.2d 571, was a case in which an airline stewardess claimed that she was a victim of "continuing discrimination". The Supreme Court held that an employer may treat as lawful any allegedly discriminatory act committed more than 180 days prior to the filing of the charge, although such conduct may be relevant background evidence in a proceeding in which the status of a current practice is at issue. The Court went on to say that if one is claiming continued discrimination then "the critical question is whether any present *violation* exists" [emphasis in the original text].

On that basis the judgment of the District Court in this case should be affirmed.

1974 according to appellee and October 1, 1974 according to appellant, rather than the effective date of the Olinkraft-Union agreement should control. If the date of promotion controls, whether it is September 8 or October 1, appellant's action is not time-barred. In light of our disposition, we need not reach this question.

**9.** Our disagreement with the views expressed in the dissent is based on the fact that the allegations in the complaint and the deposition created an issue of fact relating to present discrimination. Summary judgment is an inappropriate vehicle for deciding factual questions, and it is on this basis that we reverse.

The critical issue is whether Mary Evelyn Clark was the victim of unlawful employer discrimination at the time she filed her complaint or within 180 days prior thereto. The EEOC held that there was no reason to believe that she was so discriminated against. The District Court agreed, and I would likewise agree.

From and after August 12, 1974, the plaintiff's promotions and wages were governed by a settlement agreement entered into by the employer, the union, and the EEOC. The District Court had before it a deposition given by Mrs. Clark in which she admitted that the company had lived up to the 1974 agreement. She had been promoted to roll handler on September 8, 1974, to press operator helper on October 7, 1974, and to press operator on August 9, 1975. Her statements about men receiving promotions to which she had been entitled prior to September 5, 1974, were highly tenuous and reflected nothing more than her personal opinion that she should have received earlier promotions and been making more money. This despite the fact that she had been formally reprimanded for excessive absenteeism in 1971, 1972, 1973, and 1974. She had been granted extensive leaves of absence in 1969, 1970, and 1975.

It is obvious that Mrs. Clark filed her EEOC complaint more than 180 days after the effective date of the agreement entered into between the company, her union, and the EEOC. That should dispose of the case.

But in addition to that, it seems crystal clear on this record that when she did file her complaint there was no presently existing violation. If none then existed, then none could have been continuing and that is all there is to the case.

We have a duty to enforce the mandates of the Constitution and of Congressional enactments against unlawful discrimination in employment. It is equally our duty, I think, not to detect discrimination when none is shown to have existed. Therefore, most respectfully, I would not require the District Court to spend any more time on this claim.

I must dissent.