EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

CUSHMAN & WAKEFIELD,
INC., Defendant.

No. 85 Civ. 3826 (RWS).

United States District Court,
S.D. New York.

Aug. 6, 1986.

E.E.O.C., New York Dist. Office, New York City, pro se, Robert L. Williams, Regional Atty., Susan Anspach, Supervisory Trial Atty., Moonyene S. Jackson, Sr. Trial Atty., of counsel.

Paul, Hastings, Janofsky & Walker, Washington, D.C., for defendant; Barbara A. Brown, Susan P. Adams, of counsel.

Davis, Polk & Wardwell, New York City, for defendant; Jane Hewitt, of counsel.

SWEET, District Judge.

The Equal Employment Opportunity Commission ("EEOC") filed this action against Cushman & Wakefield, Inc. ("Cushman & Wakefield") a real estate brokerage firm, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The action was initiated on behalf of Barbara Hurley ("Hurley"), a former employee of Cushman & Wakefield, and similarly situated women in defendant's workforce, including Virginia Clay ("Clay") and Minnie Jamison ("Jamison"), who allege that Cushman & Wakefield has engaged in and continues to engage in employment practices in violation of Title VII, Section 703(a)(1) and (2) as amended by Section 701(k), which prohibits discrimination because of pregnancy and pregnancy related disabilities. 42 U.S.C. § 2000e–2(a)(1) and (2) as amended by § 2000e(k).

The illegal employment practices allegedly engaged in by Cushman & Wakefield include the failure to reinstate female employees upon return from maternity leave (Complaint ¶ 7).

Cushman & Wakefield has moved for summary judgment pursuant to the Federal Rules of Civil Procedure 56 and seeks to have the complaint dismissed. Cushman & Wakefield asserts that there is a fatal variance between the scope of Hurley's charge, the subsequent EEOC investigation, and the complaint, as compared to the actual grievance which Hurley has articulated against Cushman & Wakefield and therefore the EEOC lacks jurisdiction to proceed with this case. Further, Cushman & Wakefield argues that it is entitled to summary dismissal of the claims asserted by Jamison and Clay, also former employees of Cushman & Wakefield who asserted that they had been discriminated against on the basis of pregnancy. A motion for sanctions as to Jamison is pending before this court. Cushman & Wakefield finally asserts that Clay's claim is untimely as she left the employment of Cushman & Wakefield more than 300 days before Hurley's charge was filed with the EEOC. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

Facts

Hurley was initially hired by Cushman & Wakefield as an Administrative Assistant to the National Industrial Coordinator on August 7, 1978. Thereafter, she was promoted to the position of National Industrial Coordinator and held this position until October 15, 1981 at which time she left her employment with Cushman & Wakefield to take maternity leave. By December 15, 1981, Hurley was ready to return to work and so informed Daniel Beards, Director of Personnel. Hurley was told that efforts would be made to find her a comparable position with the company. Hurley called Beards in January, 1982 and repeatedly thereafter but was not offered a position. On March 15, 1982, Beards informed Hurley that no comparable job could be found.

Hurley offered to accept a lesser position with a lower salary until a comparable position became available, but her offer was refused, and she was terminated as of that date.

On November 17, 1982, Hurley filed a charge of sex discrimination with the EEOC alleging that she had been discriminated against on the basis of pregnancy. The EEOC then conducted an investigation of Hurley's charge by reviewing records provided by Cushman & Wakefield. According to Cushman & Wakefield's own policy, when returning from a leave of absence to full-time employment, an employee has a re-employment right to preferential treatment for a position similar to the one held previously. There is an obligation to make a substantial effort, including the possibility of retraining, to retain such an employee.

The EEOC found nothing in the record to demonstrate that Cushman & Wakefield made a vigorous effort to retain or give preferential treatment to Hurley. The EEOC concluded that Hurley could have been assigned to the position of an Administrative Assistant which would have required no retraining since she already had substantial experience in this position. The EEOC also concluded that there was reasonable cause to believe that Hurley was terminated because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended. Moreover, the EEOC stated that there was reasonable cause to believe that Cushman & Wakefield "has a practice which operates to deny reinstatement to employees who use maternity leave." Relief was sought for Hurley along with Clay and Jamison.

Cushman & Wakefield denied liability, and the EEOC denied Cushman & Wakefield's petition for reconsideration. This action was then commenced on May 20, 1985.

Hurley was deposed by Cushman & Wakefield on September 30, 1985. She reasserted her termination complaint and testified that " ... the company's general policy of the executive was anti-female in just about every area, whether it related to positions, titles, salaries or having a baby." (Hurley Dep. at 225). She also testified that during her employment at Cushman & Wakefield, she had been sexually harassed by John Dally, a top income-producing broker in the company. When asked if Dally could have said or done anything to affect her condition of employment, Hurley responded she had no way of knowing that. (Hurley Dep. at 233). Hurley never filed any charge with respect to this alleged sexual harassment, nor did she mention it to the EEOC prior to the taking of the deposition. Cushman & Wakefield asserts that Hurley has abandoned her pregnancy discrimination claim and that the EEOC no longer has jurisdiction to bring this suit.

**Discussion**

**A. Barbara Hurley**

The Second Circuit imposes a heavy burden on parties seeking summary judgment, in recognition of the fact that summary judgment deprives the non-moving party of the opportunity for a full factual development of the record through trial. *See Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir.1975). The moving party has "the burden of showing the absence of a genuine issue as to any material fact," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and all ambiguities are resolved in favor of the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*). Thus, summary judgment is inappropriate when genuine issues of material fact exist. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962).

"The scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the charge but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978). The rationale for this proposi-

tion is inherent in the legislative intent behind Title VII and the creation of the EEOC. When an employee files a charge of discrimination with the EEOC, the Commission then conducts an investigation and is under an obligation to seek voluntary compliance with the law. A civil lawsuit is filed only when compliance is not forthcoming from the employer. The civil action is thus more closely related to the EEOC investigation than to the original charge filed by the complainant. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466–67 (5th Cir.1970). Moreover, since one of the primary goals of Title VII is to obtain conciliation between the EEOC and the employer outside of the courtroom, the civil suit must be limited to the scope of issues that would have been addressed during the investigation and conciliation process. *Id.* (*citing King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga.1968)). Any other result would thwart the conciliation goals that underlie Title VII. Thus, "Title VII claims which have not been presented to, or investigated by, an administrative agency, or which are not within the scope of the EEOC investigation which reasonably could be expected to grow out of the administrative charge are properly subject to dismissal for lack of subject matter jurisdiction." *Grant v. Morgan Guaranty Trust Co. of New York*, 548 F.Supp. 1189, 1191 (S.D.N.Y.1982). *See Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

Cushman & Wakefield asserts that a fatal variance exists between the scope of Hurley's charge, the EEOC investigation, and the complaint which alleges pregnancy discrimination, on the one hand, and the actual grievance Hurley has against Cushman & Wakefield which Cushman & Wakefield believes is sexual harassment. It thus argues that the EEOC has no jurisdiction to pursue this case.

The above proposition is based on Cushman & Wakefield's interpretation of Hurley's deposition. While being deposed, the following testimony was elicited from Hurley:

Q: I believe you testified previously that you did not know of any specific individual who had an intent to discriminate against you.

A: I would like to alter that a little ... there was a gentleman in the company who will not keep his hands off of me. This individual is near the top of the company. He has a little bit to say about anything and everything that goes on from replacing the president to buying coffee ... And I honestly feel that he had something to do with my not coming back and that these other individuals that we've noted were following his—I don't want to say request. I'll call them demands.

(Hurley Dep. at 228–29).

Cushman & Wakefield argues that this testimony indicates that Hurley has abandoned her pregnancy discrimination claim. However, further testimony provided by Hurley along with the surrounding facts and circumstances do not lend support to Cushman & Wakefield's contention. The following answers offered by Hurley during the taking of her deposition demonstrate that her charge of discrimination was the failure to be reinstated following maternity leave. Hurley continued to assert her pregnancy discrimination claim as is evidenced by the following exchanges:

Q: What is it that you believe that Mr. Beards did that was discrimination against you?

A: He terminated me while on maternity leave. I don't feel that ... they worked with me to the best of their abilities as their policy procedures stipulated to bring me back in gainful employment.

(Hurley Dep. at 226)

Q: You did not ask Mr. Beards directly or hear directly from him anything to the effect that anyone had told him that you should not be rehired because of your pregnancy, did you?

A: There were conversations about did I plan to have any more children. I was awfully old to be having children. Are

you going to be having more. There were comments like that.
(Hurley Dep. at 235)

Q: What evidence do you have that you were discriminated against on the basis of sex by Cushman & Wakefield?

A: I was terminated while on maternity leave after being held on the line for two and a half months ... I generally feel that they knew all along that they were not going to hire me, rehire me, but no one had the guts to tell me. That is my honest opinion.
(Hurley Dep. at 220)

Q: Tell me every person who you believe discriminated against you on the basis of sex and pregnancy?

A: Cushman & Wakefield.

Although Hurley was unable to name specific individuals who had been involved in the decision not to reinstate her following maternity leave (Hurley Dep. at 224), there is sufficient testimony to support her continued assertion of a pregnancy discrimination claim.

■ Hurley admitted that she never filed charges concerning the alleged sexual harassment with the EEOC, and it was never included as part of the EEOC's investigation or later conciliatory proceedings. (Hurley Dep. at 232, 249–51). As stated, *infra*, courts have not permitted individual plaintiffs nor the EEOC to raise claims in judicial proceedings that are based on a type of discrimination that was not addressed during the administrative process. However, this need not present any concern since neither Hurley nor the EEOC has moved to amend the scope of the judicial complaint to now encompass sexual harassment in addition to pregnancy discrimination. The EEOC has not deviated from the charges originally filed against Cushman & Wakefield, and it thus has jurisdiction to bring this suit on the basis of pregnancy discrimination.

■ In addition to the disputed facts concerning the persistence of the pregnancy discrimination claim, Cushman & Wakefield also failed to show that there is no genuine issue as to any material fact which would compel this court to grant summary judgment to the defendant as a matter of law. For example, following her two month maternity leave, Hurley requested to be returned to her position as National Industrial Coordinator. Hurley was told that her position had been abolished. Cushman & Wakefield has consistently asserted that Hurley's job was eliminated. However, Hurley believes that her former position was not eliminated but rather was given to a male employee, Richard Arzapalo, whom Hurley had helped train. During the taking of his deposition, Arzapalo stated that he had been promoted to the position of National Coordinator Industrial/Technology group and that he had performed virtually the same duties as National Industrial Coordinator. Thus, there is a factual dispute as to whether the position of National Industrial Coordinator had actually been abolished or was merely renamed and filled by a male employee. This dispute is material in that Cushman & Wakefield's assertion might be pretextual for establishing a pattern of discrimination against female employees needing maternity leave.

While Cushman & Wakefield charges that the EEOC is attempting to "defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars ..." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), Hurley has supported her belief that Cushman & Wakefield had an "anti-female policy" with specific allegations. Testimony received during the taking of depositions coupled with company documents obtained through discovery indicates that Cushman & Wakefield utilized a policy which reinstated employees upon return from disability leave. During the relevant time period, thirteen female employees took maternity leave. Nine of these women were terminated and four returned to work. Employees who took non-maternity disability leave numbered twelve. However, in this case, eight were returned to work, three died, and only one did not

return. Coupled with these figures is the fact that Hurley was terminated after a disability leave of only two months, while other positions had been held open for employees on non-maternity disability for substantially longer periods of time. (Mellor Dep.)

Of course, this court need not make any determination as to the merits of Hurley's claim, which is subject to proof at trial. We merely conclude that triable issues of fact exist with respect to her claim which preclude the success of a motion for summary judgment.

## B. Virginia Clay

■ The EEOC claim on behalf of Clay is barred as untimely. Hurley filed her charge with the EEOC on November 17, 1982. This suit can seek redress only for those acts which took place within 300 days of November 17, 1982 or January 21, 1982. Although there is some discrepancy as to when Clay's employment at Cushman & Wakefield terminated, it is clear that her maternity leave took effect on March 14, 1980. Since a maternity leave of absence was only available for a one-year period, March 14, 1981 signifies the end of Clay's leave and is the last date on which any alleged discriminatory conduct occurred. March 14, 1981 is approximately ten months before the 300 day period predating Hurley's charge, and the EEOC is therefore precluded from seeking relief for Clay, as she did not suffer discrimination within the statutory period of the filing of the first EEOC charge. *See EEOC v. Crown Liquors of Broward, Inc.*, 503 F.Supp. 330, 335–36 (S.D.Fla.1980).

■ Although the EEOC's memorandum in opposition to defendant's motion for summary judgment was silent on this matter, at a later hearing, counsel for the EEOC argued that Cushman & Wakefield had a continuing duty to rehire Clay, making the statute of limitations inapplicable. Under counsel's argument, any time an employee is improperly dismissed, the employer would have a continuing duty to reinstate the employee, and the statute of limi-

tations would never begin to run. In essence, the statute of limitations would become a nullity.

It is now established law that "[t]imely filing [of a charge with the EEOC] is a prerequisite to the maintenance of a Title VII action." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 fn. 4, 97 S.Ct. 1885, 1887 fn. 4, 52 L.Ed.2d 571 (1977). Legislative history indicates that Congress intended the filing period to operate as a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982). "[A] discriminatory act which is not made the basis for a timely charge is, without more, merely an unfortunate event in history which has no present legal consequences." *Carter v. Newsday, Inc.*, 528 F.Supp. 1187, 1193 (E.D.N.Y.1981) (*citing United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)).

The 300 day statutory period can be tolled only if the alleged discriminatory practice proved to be a continuing violation. "[A]cts concerning hiring and termination do not constitute continuing violations, while policies concerning promotion and pay generally qualify to toll the statutory period." *EEOC v. Crown Liquors of Broward, Inc.*, 503 F.Supp. at 336 (*citing Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir.1977); *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885). Under the facts as set forth by the EEOC, it would be inappropriate to toll the 300 day statutory period with respect to Clay's claim. The EEOC claim on behalf of Clay is dismissed.

## C. Minnie Jamison

On May 2, 1986, Cushman & Wakefield filed a notice of motion with this court seeking an order pursuant to Rule 37, Fed. R.Civ.P., to exclude Jamison from any relief for her failure to attend a deposition. The EEOC has conceded that it is no longer seeking relief on behalf of Jamison. (Plaintiff's memorandum of May 22, 1986 in opposition to defendant's motion to compel and for sanctions at pp 5–6). In the EEOC's most recent memorandum in oppo-

sition to defendant's motion for summary judgment, Jamison's name was merely mentioned twice in passing. It is clear that the claim on behalf of Jamison is no longer being asserted by the EEOC.

For the foregoing reasons, the claims on behalf of Clay and Jamison are dismissed, and summary judgment is denied with respect to the dismissal of Hurley's claim.

IT IS SO ORDERED.